THE GREAT NORTHERN PAPER COMPANY, Respondent, *v.* NEW YORK TIMES COMPANY, Appellant.

First Department, July 11, 1918.

Contract — agreement to sell paper and make reductions which might thereafter be made to other customers — when buyer entitled to reduction — sale to other customer of paper differing in color only — option of other customer to purchase — concealment of other sales.

Where the plaintiff, a corporation engaged in the manufacture and sale of paper, agreed with the defendant, which published a newspaper, to furnish a certain amount of standard paper at a certain price and further agreed that if the plaintiff should thereafter during the period of the contract supply other newspapers with the standard quality of paper on a lighter basis of weight, or at a less price, said changes shall apply to the paper supplied under the contract with the defendant, the defendant is entitled to said deduction where the plaintiff, having concealed the fact from the defendant, supplied another publisher with paper of the same grade except that it was colored with a dye which was pink instead of blue, there being no material difference in the cost of manufacture or quality of the paper.

Evidence examined, and *held*, insufficient to establish the fact that the plaintiff gave to the other customer a lower rate on pink paper in consideration of the purchase of a larger quantity of white paper at a higher rate than that paid by the defendant.

*Held further*, that the evidence showed a design on the part of the plaintiff to deprive the defendant of the benefit of a reduction of price based upon the contract between them.

Where the plaintiff's contract to sell paper to the other customer at a lower price merely gave an option to purchase which was not exercised by said customer until a certain date the defendant is not entitled to a reduction under its contract until the plaintiff became bound to furnish the paper to the other customer.

Evidence examined, and *held*, insufficient to enable the court to determine whether the defendant was entitled to a deduction for waste paper, etc., especially as the defendant did not exercise its right to return the waste paper as provided in the contract, but disposed of it otherwise.

APPEAL by the defendant, the New York Times Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of November, 1916, upon the report of a referee appointed to hear and determine the issues,

*David Leventritt* of counsel [*Alfred A. Cook* and *John M. Greenfield, Jr.*, with him on the brief; *Leventritt, Cook & Nathan,* attorneys], for the appellant.

*Walter F. Taylor* of counsel [*Carter, Ledyard & Milburn,* attorneys], for the respondent.

LAUGHLIN, J.:

The plaintiff is a corporation organized and existing under the laws of the State of Maine, and, as its name implies, engaged in the manufacture and sale of paper. The defendant is a domestic corporation and is engaged in publishing the New York *Times,* a daily newspaper, in the city of New York. Under date of October 6, 1904, the parties entered into a contract in writing by which the plaintiff agreed to sell and furnish to the defendant news printing paper for use in printing the New York *Times* during the year 1905. The complaint alleges two counts, one cause of action for a balance of $34,526.39, together with interest thereon, alleged to be due to the plaintiff for paper furnished and delivered to the defendant under said contract, and another for the sum of $537.50, alleged to be the reasonable value of services rendered at the special instance and request of defendant in carrying paper from the sidewalk in front of defendant's building into the building and placing it on elevators. The defendant put in issue the allegations of the complaint with respect to the quantity of paper delivered and with respect to the price the plaintiff was entitled to receive therefor, and the allegations of the second count for services in so moving the paper. The defendant also pleaded partial defenses and counterclaims predicated on certain provisions of the contract by which the defendant was to be entitled to lower prices in certain events.

The contract provided that the paper was to be " news printing paper, wound on regulation cores in rolls for use in printing " the New York *Times,* and the width of the rolls was specified and the gross weight of the different rolls was given approximately. The contract price was $2.10 per 100 pounds, " actual gross weight of rolls, less the tare, which shall be the weight of the cores only." With respect to

weight the contract provided that the paper was " to be run on a standard basis equivalent to twenty-four (24) inches by thirty-six (36) inches equals thirty-two (32) pounds to five hundred (500) sheets, a leeway of two (2) pounds under or over the aforesaid standard basis to be allowed the Paper Company by the Publisher." With respect to quality the contract provided as follows: " The paper to be the standard quality of newspaper now manufactured by the Paper Company at Madison and Millinockett, Maine." The paper was to be delivered on the sidewalk in front of defendant's building. The plaintiff· agreed to purchase from the defendant " white waste from all paper delivered under " the contract at the rate of seventy-five cents per 100 pounds, if properly packed and delivered at the same place that the plaintiff was to deliver the paper to the defendant, but no allowance was to be made for paper remaining on the cores. The 7th clause of the contract provided as follows: "Should the Paper Company hereafter contract to supply for newspaper printing its Standard quality of News Print paper covering the year 1905 at a lower f. o. b. Mill price or on a lighter basis of weight than this contract provides for, such change shall apply to all paper supplied under this contract thereafter." Delivery of the paper was to commence " some time in January 1905 " as the defendant might require, and to terminate when the entire amount, which was not to exceed 6,900 tons, was delivered, which was to be on the 31st of December, 1905, unless plaintiff extended the time.

In November, 1904, after contracting with defendant, the plaintiff entered into a contract with the Washington Post Company for the delivery to that company of like paper during the same period at a lower F. O. B. mill price by $0.0556 per 100 pounds, but failed to inform the defendant of the making of that contract or to give the defendant the benefit of the reduced rate, to which it was entitled in consequence thereof. The learned referee held, and it is now conceded, that the defendant was entitled to a reduction in the price of paper delivered to it by plaintiff to correspond with the price charged the Washington Post Company. The learned referee, however, decided that the defendant was entitled to a greater reduction for the last nine months, and

applied this reduction to the paper delivered during the first three months of the contract only.

On December 1, 1904, the plaintiff entered into a contract with the New York Herald Company to furnish it paper for printing the New York *Herald* and the *Evening Telegram* from April 1, 1905, to April, 1907, and the contract contains a provision giving the Herald Company the right to have deliveries thereunder commence not earlier than January 1, 1905, by giving plaintiff notice on or before December 1, 1904, or not less than six weeks before the date it desired deliveries thereunder to commence, specifying such date, and in that event it was provided that the period mentioned under the contract should commence on the date so specified. The Herald Company did not exercise this right of election to have deliveries under the contract commence before April 1, 1905. By this contract the Herald Company agreed that its requirements of white paper for the period covered thereby for publishing the *Herald* would not be less than 16,000 tons or more than 20,000 tons per annum, and that its requirements of pink paper for the *Evening Telegram* would not be less than 4,000 tons nor more than 7,000 tons per annum. Under that contract the price of white paper delivered was $2.09 per 100 pounds, but the basis of weight was two per cent lighter than the contract between plaintiff and defendant, which made the corresponding price to which the plaintiff was entitled $2.028. The white paper contracted to be furnished to the Herald Company was precisely the same in quality and color as that contracted to be delivered to the defendant. The learned referee, therefore, held that the defendant was entitled to a reduction in price to that figure from April 1, 1905. The mill price of the pink colored paper under the Herald contract was $1.728. The learned referee held that the defendant was not entitled to a reduction corresponding to the price at which the plaintiff sold the pink paper. This, we think, was error. The uncontroverted evidence shows that the plaintiff only manufactured one quality of paper, and that the only difference between the white and pink paper was the color, which was produced by aniline dye used during the process of manufacture. To produce a pink colored paper pink dye was used, and to pro-

duce white paper blue dye was used. There is no material difference in the cost of manufacture in using either the pink or blue dye, and the evidence tends to show that the pink is possibly a little cheaper. There was no difference in the thickness, weight, texture or tensile strength of the white and pink paper or in the method of manufacture, except as to the color of the dye used as already stated. The white and pink paper were both the same standard quality and designed for the same use, namely, for printing newspapers. No evidence was offered tending to show any basis for a difference in the prices charged by the plaintiff to the Herald Company for the white and pink papers. The learned counsel for the respondent ingeniously argues that the most favorable view of the Herald contract to be taken in behalf of the defendant is that it is to be inferred that the plaintiff agreed to furnish and deliver the pink paper at a lower rate in consideration of the Herald Company's agreeing in the same contract to take a larger quantity of the white paper at the higher rate, and that, therefore, an average price of all the paper covered by the contract should be taken. The difficulty with that contention is that there is no basis therefor in the evidence other than the contract itself. The plaintiff likewise refrained from informing the defendant of the contract that was made with the Herald Company and failed to give the defendant the benefit of either rate charged to the Herald Company. Moreover, we find in the contract between the plaintiff and the Herald Company evidence of a design on the part of the plaintiff to deprive the defendant of the benefit of a reduction of rate based thereon. In that contract it is provided that the white paper to be furnished to the Herald Company was to be the plaintiff's " special grade number one," and that the pink paper was to be plaintiff's " pink grade number two," and that each should be substantially the same as the samples annexed, which were copies of the *Herald* and *Telegram*.

These grades of paper were fictitious, as plaintiff made but one grade. These views find support in another contract between the plaintiff and the Herald Company of the 18th of November, 1905, which canceled the former contract as of October 1, 1905. That contract covered the period from October 1, 1905, to April 1, 1909, and provided that the price

of the paper sold and delivered thereunder from October 1, 1905, to January 1, 1906, should be the same as under the former contract, but that subsequent to that time the price was specified as $1.95 per 100 pounds for both white and pink paper. Prior to the execution of that contract and on November 2, 1905, the plaintiff wrote a letter to the Herald Company stating that in consideration of the latter company's agreeing to pay the prices specified in the proposed contract for paper to be delivered from October 1 to December 31, 1905, it would on January 3, 1906, send the Herald Company a check for the difference between such prices and the price specified in the new proposed contract for paper to be delivered after January 1, 1906, with interest at four per cent. We are of opinion, therefore, that the defendant is entitled to a reduction based on the plaintiff's contract to supply pink colored paper to the Herald Company.

The learned counsel for the appellant further contends that it is entitled to the benefit of the reduced rate resulting from plaintiff's contract with the Herald Company from January 1, 1905, on the ground that the plaintiff contracted with the Herald Company to furnish and deliver paper at the rates specified in the contract from January first at the election of the Herald Company to be manifested as hereinbefore stated. The learned counsel for the respondent argues that the contract was a mere option given to the Herald Company for the period from January first to April first, and that inasmuch as the option was not exercised there was no contract; and he further contends that in no event was the defendant entitled to the benefit of either rate specified in the Herald contract until by the exercise of the option the plaintiff became bound to furnish and deliver and the Herald Company became obligated to accept and pay for paper delivered thereunder prior to April 1, 1905, particularly in view of the last clause of paragraph 7 of the contract between the plaintiff and the defendant wherein it is provided that such change shall apply to all paper supplied thereunder " thereafter." There is much force in these contentions, and we are of opinion that the defendant was not entitled to the reduced rate under the Herald contract until April 1, 1905.

The learned referee declined to give the defendant the

First Department, July, 1918.                    [Vol. 184.

benefit of the reduced rate provided for in the second Herald contract after October 1, 1905. We agree with the learned counsel for the appellant that it is entitled to the benefit of the reduced rate specified in the second Herald contract from October 1, 1905, for it is perfectly obvious that by the letter the plaintiff became bound to give the Herald Company the benefit of the new price throughout the period of the second contract, and that there was an attempt by the form of the contract, which contains no reference to the letter, to conceal that fact and thus deprive the defendant of the reduced rate.

The learned counsel for the appellant also contends that it is entitled to a further reduction under the clause of paragraph 7 relating to a lighter basis of weight under other contracts made by the plaintiff. The defendant was only allowed to deduct the weight of the cores and to deliver back white *waste* at seventy-five cents per 100 pounds, while the Herald Company was allowed to deduct the weight of cores, wrappers and *damaged* paper, and the defendant was required to give the plaintiff a leeway of two pounds over the standard basis of weight specified in its contract while the Herald Company was required to give the plaintiff a leeway of only one pound in excess of the standard weight specified in the contract between it and the plaintiff. There would be merit in these contentions if the evidence afforded sufficient basis for making a computation, but we think it does not. There is no evidence as to whether the paper ran over or under the maximum leeway of weight given to the plaintiff under the contract between it and the defendant and between it and the Herald Company. The defendant did not exercise its right to return the white waste paper to the plaintiff as provided in the contract, but disposed of it otherwise. Counsel for the appellant on the evidence showing the weight of the paper as delivered and charged to the defendant and on evidence based on a computation with respect to the amount of paper actually used in the issues of the *Times* contends that the difference between these weights shows the amount in weight of the white waste paper and of the wrappers, and that since the Herald Company was entitled to deduct both the weight of the wrappers and damaged paper, the defendant should be entitled to a rebate on the

same basis with an allowance to the plaintiff of the amount shown by the evidence to have been realized by the defendant on a sale of the white waste paper. Such a deduction could only be made on the assumption that *all* paper delivered to the defendant and not used by it was *damaged* paper when delivered to it by plaintiff and that the failure to use it was in no part owing to any negligence on the part of the defendant or its employees in feeding the paper or operating the presses or in caring for the paper after it was received. On that point there is no evidence; nor is there any evidence with respect to the care exercised by the defendant over the paper after it was delivered. Moreover, the evidence affords no basis from which it can be determined as a fact that the provisions of the Herald contract allowing it to deduct the weight of the wrappers and *damaged* papers was more favorable than the provisions of the defendant's contract allowing it to return *all white waste* at seventy-five cents per 100 pounds.

It follows, therefore, that the judgment should be modified as herein indicated and findings of fact and conclusions of law inconsistent with these views, to be specified in the order, reversed, and findings of fact and conclusions of law in accordance with these views made, and the judgment as so modified affirmed, with costs to appellant.

CLARKE, P. J., SMITH, PAGE and SHEARN, JJ., concurred.

Judgment modified as indicated in opinion and as so modified affirmed, with costs to appellant. Order to be settled on notice.